**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **v.** | **NO. 22-cr-135-2** |
| **NIKEEM LEACH-HILTON**<br>*Defendant-Petitioner* | |

**Baylson, J.**                                                          **September 26, 2024**

## MEMORANDUM

After entering into a plea agreement that contained a waiver of the right to appeal and collaterally attack the conviction and sentence, Defendant-Petitioner requested that his attorney file a notice of appeal of his sentence within the required period, 14 days. Defense counsel did not file the requested notice of appeal and instead told him he could not file an appeal in light of his appellate waiver. Because it is undisputed that Defendant made a clear request to his attorney file an appeal, which his lawyer rejected, this Court will **GRANT** Defendant's §2255 Motion insofar as it claims ineffective assistance of counsel for failure to file a notice of appeal.

## I.    UNDISPUTED FACTUAL AND PROCEDURAL HISTORY

On August 7, 2023, Defendant Leach-Hilton pled guilty, pursuant to a plea agreement, to Counts One, Two, Four, Six and Seven of an Indictment charging him and a co-defendant with conspiracy in violation of 18 U.S.C. §371 (Count One), carjacking in violation of 18 U.S.C. §2119 (Counts Two, Four, and Six), and using and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c) (Count Seven). (Case No. 22-135, Docket No. 91) ("Plea Agreement"), ¶ 1. The Plea Agreement contained a provision dismissing Counts 3 and 5 of the Indictment. Id. at ¶ 2. The agreement also cabined the sentence imposed within the range of imprisonment of 192 and 219 months followed by 5 years of supervised release. Id. at ¶ 5. The

sentencing range outlined in the Plea Agreement was greater than that calculated by the United States Probation Office, whose effective guideline range was 181 to 205 months. (Case No. 22-135, Docket No.102) ("Sentencing Memorandum"), at 16.

The Plea Agreement included a provision where, if the Court accepted the agreement and imposed a sentence within the recommended guidelines, the Defendant waived his right to appeal the conviction, sentence, or any other matter relating to the prosecution. Plea Agreement, at ¶ 14. The provision permitted the Defendant to retain the right to file a claim of constitutionally ineffective assistance of counsel. Id. In the August 7, 2023 plea hearing, Defendant affirmed that he understood the waiver of appellate rights provision within the Plea Agreement. (Case No. 22-135, Docket No.93) ("Plea Hearing Tr."), at 13–14.

On November 29, 2023, this Court accepted the Plea Agreement in a sentencing hearing and imposed a sentence of 219 months of incarceration, followed by five years of supervised release. (Case No. 22-135, Docket No. 106) ("Sentencing Hearing Tr."), at 43. At the plea hearing, this Court engaged in a colloquy to ensure that Defendant understood the appellate rights waiver in the agreement if the Court imposed a sentence within the guidelines. Plea Hearing Tr., at 13–14. At the sentencing hearing this Court informed Defendant that if he believed he had a right to appeal, he should file an appeal with his counsel within 14 days. Sentencing Hearing Tr., at 42–43. Furthermore, this Court directly asked defense counsel, Michael I. McDermott, if he would file a notice of appeal if the Defendant requested, or, alternatively, notify the Court to appoint new counsel. Id. Defense counsel represented to this Court that "[if Defendant] wants me to appeal I'll at least get the ball rolling for him and discuss with his family whether they can afford counsel." Id.

2

On December 8, 2023, Defendant requested his attorney file a notice of appeal of his sentence. (Case No. 22-135, Docket No. 133-4) ("TRULINCS Messages"), at 5. First, Defendant messaged Mr. McDermott, "can I ask you a actual question?" Id. at 1. Then, Defendant asked "[i]s there any way you can Appeal my sentence? i honestly feel like he didnt take in Consideration nothing what so ever. not even my Guideline changing factors or nothing its like he already had his mind made upof what he was going to sentence me too, he sentenced me to something that wasnt even my guideline range i know he said i have 14 days to appeal my sentence[.]" Id. at 3.

Mr. McDermott' reply was as short as it was unequivocal: "No can do[.] We always knew he was going with the higher number[.]" Id. at 4.

But Defendant persisted, telling his lawyer "i need you to file a notice of appeal of my sentence of conviction of imprisonment for the time imposed." Id. at 5. When he received no response after four hours, Defendant followed up, "Are you going to do that for me? it wont take you nothing but a second man... im honestly just trynna get a better sentence[.]" Id. at 6.

Mr. McDermott did not file a notice of appeal, and instead responded with one line—"You signed off on the appeal[.]" Id. at 7. Having received that message, Defendant replied, "oh yeah right i forgot i signed off on the appeal haha." Id. at 8. Following the December 8 messaging exchange, neither Defendant nor his counsel revisited the subject in direct communications. The window of time in which Defendant could have filed a notice of appeal expired shortly thereafter, on December 13, 2023. Mr. McDermott, for his part, submitted an affidavit in support of the Government's position, where he swore that he did not believe Defendant could "appeal as the negotiated plea required [Defendant] to waive any right to appeal" and that he "did not believe that an appeal on any issue related to [Defendant's] sentence would be meritorious." (Case No. 22-135, Docket No. 133-1 ("McDermott Aff."), at 3.

Four months later, on April 1, 2024, Defendant, acting pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255. Defendant's §2255 Motion. In response, the Government filed a Response on May 3, 2024. (Case No. 22-135, Docket No. 133) ("Government's §2255 Response"). Defendant subsequently filed a Reply reasserting the claim that his counsel's performance was constitutionally deficient both in failing to file a notice of appeal and neglecting his duty to consult. (Case No. 22-135, Docket No. 134) ("Defendant's §2255 Reply").

## II.   **DISCUSSION**

A 28 U.S.C. §2255 motion provides a means of petition for persons in federal custody. Using §2255, a prisoner may move the court to "vacate, set aside, or correct" their sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. The Third Circuit historically prefers petitioners bring claims of ineffective assistance of counsel in the form of §2255 motions. See e.g., United States v. Chew, 284 F.3d 468, 470 (3d Cir. 2002) (recognizing the court's long-time preference). Unless the relevant case documents "conclusively show that the prisoner is entitled to no relief," the proper action under 28 U.S.C. §2255 is to grant a prompt evidentiary hearing. However, if there are no "disputes of material facts," a district court adequately exercises its discretion by "grant[ing] or den[ying] a §2255 without first holding an evidentiary hearing." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015). The court should provide relief under §2255 when "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and … presents exceptional circumstances where the need for the remedy afforded by the writ … is apparent." Melendez, 2022 WL 2986764,

at *3 (internal quotation marks omitted) (quoting <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974)).

If a court finds that a judgment was rendered that violated one of the above four stipulations and is vulnerable to collateral attack, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255(b). The petitioner bears the burden of showing that the §2255 motion has merit. <u>See</u> <u>United States v. Davies</u>, 394 F.3d 182, 189 (3d Cir. 2005). For Defendant's ineffective assistance of counsel claim, petitioner must demonstrate that "counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken." <u>Flores-Ortega</u>, 528 U.S. at 484.

### A.    <u>Discussion of Ineffective Assistance of Counsel</u>

The United States Constitution guarantees a criminal defendant "the right to…the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. Furthermore, defendants are entitled to "the right to the <u>effective</u> assistance of counsel." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (emphasis added). The right to effective assistance of counsel is recognized because counsel "play[s] a role that is critical to the ability of the adversarial system to produce just results." <u>Id.</u> at 685. In <u>Strickland</u>, the Supreme Court put forward a two-prong test where a defendant arguing his counsel was constitutionally ineffective must show: (1) "that the counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." <u>Id</u>. at 687.

The first prong of the <u>Strickland</u> analysis addresses representation that "[falls] below an objective standard of reasonableness". <u>Id.</u> at 687–88. Professionally unreasonable action includes when "a lawyer … disregards specific instructions from the defendant to file a notice of appeal."

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Sound strategic decisions made by counsel do not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 689. A decision to disregard a client's specific instructions to file a notice of appeal, however, cannot be considered a strategic decision. See Garza v. Idaho, 586 U.S. 232, 241 (2019). Because this action is "a purely ministerial task that imposes no great burden on counsel," failing to file demonstrates "inattention to the defendant's wishes." Flores-Ortega, 528 U.S. at 474, 477.

Credible testimony from the parties and attendant supporting actions such as filing pro se petitions regarding appeals can be used to determine whether a defendant adequately expressed his wishes to file a notice of appeal. See United States v. Melendez, 2022 WL 2986764, at *4 (E.D. Pa. Jul. 28, 2022) (Smith, J.); Fuentes, 2020 WL 4226473, at *8; Montoya v. United States, 2020 WL 1065725, at *2 (W.D. Tex. Mar. 5, 2020). In Melendez, the court ruled that, even without an explicit request, Defendant and his family members' attempts to contact counsel about an appeal following the sentencing were sufficient to satisfy the first prong of the Strickland analysis. See Melendez, 2022 WL 2986764, at *4 (finding that attorney acted objectively unreasonably when ignored defendant's phone calls, post-conviction, to file an appeal). Conversely, general inquiries and ambiguous statements asking for advice typically do not suggest a clear request, albeit in different constitutional contexts. See e.g., Soffar v. Cockrell, 300 F.3d 588, 595 (5th Cir. 2002) (finding defendant's questions about if he should get an attorney, how to obtain an attorney, and how long it would take to have an attorney appointed did not constitute an unambiguous assertion of the right); see also United States v. Cruz, 22 F.3d 96, 98 (5th Cir. 1994) (finding defendant's statement that he was a "working man" who "couldn't afford an attorney" did not amount to a request for counsel); Lord v. Duckworth, 29 F.3d 1216, 1220–21 (7th Cir. 1994) (finding

defendant's statement "I can't afford a lawyer but is there anyway I can get one?" was not a clear request for counsel because it lacked the "present desire to consult with counsel").

The second prong of the *Strickland* analysis, prejudicial impact, requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. If counsel failed to follow a defendant's clear request for appeal, prejudicial impact is presumed and does not require a eefendant show the merits of his underlying claim. See Flores-Ortega, 528 U.S. at 484. Because requiring pro se defendants to prove the merits of their hypothetical appeal would be unfair, a defendant only need prove that "but for counsel's deficient conduct, he would have appealed." Id. at 486.

The presumption of prejudice applies even when a defendant has signed an appeal waiver. Garza, 586 U.S. at 235. Though a plea agreement may significantly narrow the avenues for appeal, "whether a defendant signed an appellate waiver is irrelevant to this inquiry." Melendez, 2022 WL 2986764, at *4. This is true even when a waiver is deemed enforceable. See United States v. McLaughlin, 2021 WL 684044, at *3 (E.D. Pa. Feb. 22, 2021) (Pratter, J.). Waivers limiting appellate rights are irrelevant to the Strickland analysis because "no appeal waiver serves as an absolute bar to all appellate claims." Garza, 586 U.S. at 238. United States v. Lawbaugh, 842 F. App'x 795, 797 (3d Cir. 2021) (recognizing "there are [some] appellate rights that cannot be waived.") Petitioner can, for example, bring a claim that he was deprived of assistance of counsel provided by the Sixth Amendment, even if he signed a valid plea agreement waiving appellate rights. See e.g., United States v. Thurmon, 2024 WL 796627, at *4 (E.D. Pa. Feb. 5, 2024) (Hey, M.J.) (describing a plea agreement where defendant waived his appellate rights "except for unwaivable constitutional claims, claims that his sentence on any count exceeded the statutory

maximum, or claims that his sentence resulted from an erroneous departure from the guidelines"); United States v Eddings, 2022 WL 900343, at *2 (W.D. Pa. Mar. 28, 2022) (describing a plea agreement where defendant waived his appellate rights "save a claim that petitioner was deprived of the assistance of counsel as secured by the Sixth Amendment").

A defendant's initial, clear communication of a desire to appeal is sufficient to warrant relief. See Fuentes, 2020 WL 4226473, at *8; Montoya, 2020 WL 1065725, at *2. The removal of a clear request does not per se overcome the presumption of prejudicial impact. See Fuentes, 2020 WL 4226473, at *8. In Fuentes, the defendant asserted that he "asked counsel to appeal his case but that counsel refused to do so because of the appellate waiver." 2020 WL 4226473, at *8. Defendant later withdrew his pro se notice of appeal, citing the waiver of appellate rights in his plea agreement as the reason for his retraction. Id. The court found that such withdrawal did not undermine the presumption of prejudice assumed when an attorney fails to file an appeal upon his client's instruction. Id.

Even when a defendant does not make a clear request to appeal, defense counsel's vital role includes a "[duty] to consult with the defendant on important decision." Strickland, 466 U.S. at 688. With respect to appeals, counsel must consult when there is "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Consultation requires counsel to "[advise] the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." Id. at 478. Unlike refusing a clear request of appeal, failure to consult is not per se ineffective counsel (prong two of the Strickland analysis); it is rather

the "reasonable probability that, but for counsel's deficient failure to consult with him about an appeal [the defendant] would have timely appealed." Id. at 484.

If ineffective assistance of counsel is sufficiently determined by the record, "an evidentiary hearing to develop the facts is not needed." United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). Evidentiary hearings are utilized when the alleged facts warranting relief under §2255 are not clearly resolved by the record. Tolliver, 800 F.3d at 141. Such hearings are not necessary if "the motion and files and records of the case show conclusively that the movant is not entitled to relief." Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). The same standard applies "with equal force" when a court acts in the opposite direction by granting a §2255 Motion. See Tolliver, 800 F.3d at 141. While a defendant does not need to affirmatively "prove" that defense counsel failed to file upon clear request, if counsel's ineffectiveness "is plain from the record," a court may properly exercise discretion in granting a §2255 Motion without an evidentiary hearing. Headley, 923 F.2d at 1084; See United States v. Arrington, 13 F.4th 331, 335 (3d Cir. 2021).

## III.   **ANALYSIS**

Defendant has made out a claim of ineffective assistance of counsel that demands relief. Counsel's denial of Defendant's request to file a notice of appeal and subsequent explanation citing the Plea Agreement is an error such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Defense counsel affirmatively agreed to "get the ball rolling" for the defendant should he want to appeal when asked by this Court. In failing to file a notice for appeal, counsel deprived Defendant of a fundamental right to a direct appeal after conviction and sentencing. See Melendez, 2022 WL 2986764, at *1. This right exists no matter how strict the appellate waiver. See Garza, 586 U.S. at 238.

As to the first prong of the <u>Strickland</u> analysis, the uncontroverted December 8 messages between Defendant and Mr. McDermott are sufficient to establish professional unreasonableness. An attorney's disregard of specific instructions from his client to file a notice of appeal is professionally unreasonable. <u>See</u> <u>Flores-Ortega</u>, 528 U.S. at 477. Defendant's messages to his attorney on December 8 were clear, specific instructions. His statement "i need you to file a notice of appeal of my sentence…" was bracketed by clear communication of his dissatisfaction with the sentence and insistence in asking if his attorney will file the appeal for him because "it wont take you nothing but a second man." <u>See</u> <u>Melendez</u>, 2022 WL 2986764, at *4 (finding a defendant's testimony that he told his plea counsel he wished to file an appeal alone satisfied the first <u>Strickland</u> analysis requirement). The December 8 messages unambiguously demonstrated Defendant's desire to file a notice of appeal and specifically instructed defense counsel to do so. Instead, counsel stated "No can do."

Disregard of a clear request for appeal is <u>per se</u> prejudicial. Defense counsel's failure to file a notice of appeal upon clear request establishes that there is a reasonable probability that Defendant would have otherwise timely appealed. <u>See</u> <u>Garza</u>, 536 U.S. at 242. This presumption is not undermined by Defendant's waiver of appellate rights in his Plea Agreement nor responses to his lawyer after his request was denied. Defendant's waiver, however sweeping, is not an absolute bar to all of his potential claims. <u>See</u> <u>Garza</u>, 536 U.S. at 238. As <u>Garza</u> reminds, appellate waivers do not alleviate an attorney's obligation to file a notice of appeal upon clear request, nor diminish the prejudicial impact when ignored. <u>Id.</u> Unfortunately, Mr. McDermott's affidavit, where he justified his refusal to appeal based on the appellate waiver, relies on the exact reasoning <u>Garza</u> rejected. Mr. McDermott's prognosis of the merits of Defendant's appeal are irrelevant; he

was obligated to execute the ministerial task of noticing appeal upon his client's clear demand. His failure to do so was objectively unreasonable and prejudiced his client, Mr. Leach-Hilton, per se.

The Government counters that Defendant withdrew his request for appeal after his lawyer denied him. Defendant's message "oh yeah right I forgot i signed off on the appeal haha," the Government contends, could be interpreted as Defendant withdrawing his prior clear request. But this argument is unpersuasive for two reasons.

Regarding prejudice, even if Defendant removed his clear request via text conversation, such action is not dispositive. See Fuentes, 2020 WL 4226473, at *8. In Fuentes, the defendant's statement that "he could have appealed other issues" after withdrawing his notice of appeal, citing his appellate waiver, was relevant in establishing ineffective assistance of counsel. Id. So too are the defendant's actions and statements following his potential rescission relevant here, where he filed this § 2255 motion. Defendant's re-affirmation of his desire to file an appeal demonstrates that both prongs of the Strickland analysis are clearly met. See e.g., Melendez, 2022 WL 2986764, at *4 (finding a defendant's credible testimony regarding his attempts to contact counsel and express desire to appeal satisfied the Strickland analysis).

But more consequentially—and at heart of the present motion—Defendant relied on his attorney's curt, matter-of-fact "No can do" when he wavered. As Justice Black wrote, the right to effective counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty. . . That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious." Johnson v. Zerbst, 304 U.S. 458, 462–63 (1938). Thus, because "[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law" and "requires the guiding hand of counsel at every step

11

in the proceedings against him," he is afforded adequate counsel. Id. See Gideon v. Wainwright, 372 U.S. 335, 345 (1963). Garza is unequivocal that a lawyer must follow a clear request to file an appeal, just as a court must appoint a lawyer to an indigent defendant who requests one, Rothgery v. Gillespie Cnty., Tex., 554 U.S. 191, 198–203 (2008), and law enforcement must cease custodial interrogation upon clear invocation of a defendant's Fifth Amendment right to remain silent. See Davis v. United States, 512 U.S. 452, 459 (1994) (police must cease questioning when defendant invokes right to counsel); United States v. Lafferty, 503 F.3d 293, 299 (3d Cir. 2007) (police cannot continue to interrogate defendant after he clearly invokes right to remain silent). In all, it is clear to this Court that a defendant cannot be penalized for his attorney proffering an opinion directly at odds with the constitutional rights outlined in Garza. So, when considering the totality of the evidence provided, Defendant demonstrated a clear desire to appeal that was not only unaddressed, but unreasonably rebuffed by his attorney.

But even if this Court adopted the Government's argument that Defendant did not clearly provide specific instructions that Mr. McDermott file an appeal, it would still find that counsel breached his duty to consult with Defendant about filing an appeal. In unflinchingly denying Defendant's request by stating "No can do," counsel did not adequately "[advise] the defendant about the advantages and disadvantages of taking an appeal," as required by his duty to consult with a defendant who clearly expresses an interest in appeal, as here. Flores-Ortega, 528 U.S. at 478, 480. Perhaps more troubling, counsel appears to have "[made] a reasonable effort to discover the defendant's wishes" and then acted contrary to those wishes. Id.; see also Rojas-Medina v. United States, 942 F.3d 9, 18 (1st Cir. 2019) (holding that "[t]rial counsel's two-minute chat with the [defendant]" after sentencing failed duty to consult "about the pros and cons of taking an appeal").

Defendant demonstrated to his counsel that he desired his attorney file a notice of appeal, and therefore both prongs of the <u>Strickland</u> analysis are satisfied. <u>Flores-Ortega</u>, 528 U.S. at 484. Defendant's December 8 messages clearly establish ineffective assistance of counsel in (1) failing to file a notice of direct appeal and (2) failing to adequately consult with him about appealing.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, this Court will **GRANT** Defendant's §2255 Motion insofar as it claims ineffective assistance of counsel for failure to file a notice of appeal. An appropriate **ORDER** will follow.